## PROSECUTION FOR ASSAULT WITH INTENT TO MAIM.

Circuit Court of Ashtabula County.

JOHN O'BRIEN v. THE STATE OF OHIO.

Decided, September Term, 1908.

*Criminal Law—Assault with Malicious Intent to Maim or Disfigure—Evidence Necessary to Convict—Maim and Mayhem—Intention Inferred from Circumstances—Section 6819.*

Where an assault is committed by a blow upon the head with a blunt instrument, under circumstances evincing an intent to permanently disable the person assaulted in respect to the use of some member of the body necessary in defense of his person or to annoy his adversary, the party committing the assault may be convicted of an assault with intent to maim.

*Boyd, Marvin & Lawyer,* for plaintiff in error.
*Clyde L. Taylor,* Prosecuting Attorney, contra.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.
Error to Ashtabula Common Pleas Court.

John O'Brien was convicted, under Section 6819 of the Revised Statutes, of the crime of assaulting George Ryle with a dangerous weapon with the malicious intent to maim and disfigure. The indictment contained three counts: the first of assault with intent to kill, and the second and third of assault with intent to maim and disfigure; the last two counts being substantially the same. The jury returned a verdict of not guilty on the first and third counts and guilty on the second count. He was sentenced by the court to the penitentiary and the case is now before us on error.

The circumstances as detailed in the evidence are briefly these:

A construction firm was putting up some structural steel work at Ashtabula Harbor, and the work was being done with non-union labor, which was objectionable to union men; and the union at Cleveland sent several men to the harbor to look after the interests of the union men, and to see if the non-union men could not be induced to quit working. These special agents of the union were assisted by a number of other men at the harbor so that there were quite a number of men, union and non-union, on each side.

As ordinarily in cases of this character the controversy became quite hot and much bad blood was aroused. About six o'clock in the morning, when the assault took place, Ryle was going to work and passed diagonally across the corner of two streets when four men came in the opposite direction; coming from behind a small building, and met Ryle about half way across the intersection of the streets. Each of the four, or at least some of them, had a piece of gas pipe about eighteen inches long and one inch in diameter, covered with heavy brown paper. They were closely huddled together, and one of them struck Ryle over the side of the head with his weapon, making a serious and dangerous wound, but not of sufficient force to fracture the skull. The blow felled Ryle to his knees when he pulled his revolver and shot one of his assailants dead; the other three immediately fleeing in different directions. There is no evidence of any threats being made by O'Brien, or by either of the other three.

Two questions of error are made before us, and are strenuously relied upon by counsel for plaintiff in error. First, that the evidence does not sufficiently show that O'Brien was one of the parties that committed the assault. Second, that the evidence wholly fails to show that the assault was made with the malicious intent to maim or disfigure. We have examined the evidence and we think the jury did right in finding that O'Brien was one of the parties that committed the assault. The judgment, therefore, can not be reversed upon that ground.

The second ground of error presents a question of much more difficulty, and that is, whether the malicious striking of a person upon the head with a blunt instrument, of the character and under the circumstances shown in the evidence, is sufficient to show a malicious intent to maim or disfigure. It must be conceded that whatever may be the holding in the different states— and the decisions are directly contrary—in our own state, in order to convict of an assault with the malicious intent to maim or disfigure, the act must be done with intent to permanently injure one of the members of the body specifically set forth in Section 6819 of the Revised Statutes, and to maim the assault must be made with the malicious intent to injure a member that may be used in the defense of the person, or to annoy an adversary.

*State* v. *Johnston,* 58th O. S., 417; the first section of the syllabus in that case is as follows:

"1. Maim and mayhem are, at common law, equivalent words, and mean the same thing; therefore, a count in an indictment charging the defendant with maliciously biting the ear of another with intent to maim, can not be supported as to the particular intent charged, as the biting of an ear does not in law constitute a maiming."

On page 423 in the opinion it is said:

"There is no question, we think, but that maim as a noun, and mayhem are equivalent words, or that maim is but a newer form of the word mayhem—the difference being in the orthography and not in the sense. Webster's Unabridged Dictionary: 'Maim,' as a noun, is there defined the same as mayhem: 'The privation of the use of a limb or member of the body by

which one is rendered unable to defend himself or to annoy his adversary.' This is the definition of mayhem at common law (1 East, P. C., 393; 1 Whar. Criminal Law, Section 581). Hence the verb 'to maim' is accurately defined in Anderson's Law Dictionary, as follows: 'To commit mayhem.' "

Again, on page 425, it is said:

"If the member be not one of use to the person in defending himself, an injury to it can not be said to have been done with intent to maim."

In this case it is not claimed by the State that there was any intent to disfigure on the part of O'Brien; neither could there be, as there is nothing tending to show such intent by the injury or by any circumstance in the case.

The question then arises, is the evidence sufficient to show, under the law as laid down in *State* v. *Johnson, supra,* an intent to maim; that is, such privation of the use of a limb or other member of the body by which one would be rendered less able to defend himself or to annoy his adversary. The injury in this case produced no such effect, so that no implication of fact or law arises that the accused intended that which his act in fact produced, and a specific intent must therefore be shown from the manner of inflicting the blow, the part of the body struck and the circumstances under which the injury was inflicted.

Intent is a mental state, and therefore very difficult of proof. The only manner in which it can be proven is by the circumstances of each particular case, and if the circumstances are of such character as to satisfy the triers of the facts beyond a reasonable doubt, not only that the act was done by the defendant, but that it was done with the felonious intent charged in the indictment, that is sufficient.

The rule is well stated by Elliott on Evidence, Section 2841:

"[*Intent—Inferred from Circumstances.*] While it is incumbent upon the state to prove the intent, yet the law, recognizing the difficulty of proving mental states, does not require proof of such intent by direct evidence, but it may be established by proof of such facts and circumstances from which the intent may naturally or reasonably be inferred. One court very

aptly stated the rule thus: 'But it is generally true that the State is not expected and can not be required to make proof of felonious intent, as a fact, by direct and positive evidence; for as a general rule, men who do or commit acts do not proclaim in public places the intent with which such acts are done. If the State were required to make direct and positive proof of the felonious intent which characterizes the act done as a public offense, the result would be that many persons, charged and guilty of public crimes, would go acquit unwhipt of justice.' Therefore all that the State is required to do in such cases is to introduce such evidence on the trial of the cause as will satisfy the triers of the facts, whether court or jury, beyond a reasonable doubt, not only that the act was done by the defendant, but that it was done with the felonious intent charged in the indictment.''

The jurors and the trial judge were so satisfied in this case. Were they in error in being so satisfied? We think not. Here was a contention between two conflicting parties of large numbers. The question between the factions was which should do the work of construction, union labor or non-union labor. There could be no reasonable object in killing Ryle; it would not accomplish their purpose, and at the same time upon apprehension be attended with severe penalty.

The main object, no doubt, was to disable Ryle and not kill him. This is shown by the weapon used and the manner of its use. It was wrapped with heavy paper so as to blunt the force of the blow. Why use an eighteen-inch piece of gas pipe so protected, if the main intent was to kill? Why not have used a revolver or other gun at a safe distance, at some secluded point; why go four together attracting attention leading necessarily to detection, apprehension and conviction? But it is said, they did not maim Ryle. True, but what would have happened had he not shot one of the number down? They were there to disable him; teach him a lesson, and had it not been for his revolver, no doubt numbers of blows would have fallen upon his arms, limbs and other members of his body. Who can say, under such circumstances, the assault was not made for the purpose of maiming?

The case of *Ridenour* v. *The State*, 38 O. S., 272, is a case quite similar to the one we are considering. Ridenour was convicted

of shooting with intent to maim. He shot Montgomery in the trunk of the body near the navel; a nerve was destroyed by the bullet in its course and paralyzed his right leg. In the second paragraph of the syllabus it is held:

"2. Where one shot another in the trunk of the body, and the result was to produce paralysis of a leg, causing a permanent disabling of that member, a verdict of guilty with intent to maim is supported by sufficient evidence. The accused might fairly be presumed to have intended the actual and natural result of his unlawful act."

True, in that case an actual maiming took place and raised a presumption against Ridenour, but we think not stronger than the presumption raised by the circumstances in this case.

On page 274 in the opinion it is said:

"It further appeared, however, that a nerve was destroyed by the bullet in its course, and that although the patient has recovered, his right leg is disabled by paralysis, from which it is said he will never, in all probability, recover. From this it seems that the result of the shooting was actually to maim. Can it be said that the verdict finding that the accused intended the result of his criminal act was not warranted? We think not. The law presumes all persons to contemplate the natural and probable results of their actions; and we can not say that the natural and probable result of such an injury as this is not to cause the loss of the use of some important member of the body."

Mark the closing sentence:

"The law presumes all persons to contemplate the natural and probable results of their actions; and we can not say that the natural and probable result of such an injury as this is not to cause the loss of the use of some important member of the body."

So a blow upon the head made under the circumstances shown in this case may be presumed to have been made with intent to cause the loss of the use of some important member of the body. Indeed, it is well settled by medical authority that a violent blow upon the head not fracturing the skull frequently does cause the paralysis of an arm or leg. American Text Book of Surgery; Principles and Practice of Surgery, by De Costa.

The judgment of the court of common pleas is affirmed.